UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NEUROSHIELD NETWORK SE, LLC, | ) | CASE NO.:  1:25-cv-01277 |
| | ) | |
| Petitioner, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| PHOENIX ADMINISTRATORS, LLC | ) | **MEMORANDUM OPINION** |
| (*d/b/a* Performance Health), | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

Before the Court is Respondent Phoenix Administrators, LLC's ("Performance Health")

Motion to Dismiss.  (Doc. 10.)  Petitioner NeuroShield Network SE, LLC ("NeuroShield")

opposed the motion (Doc. 15), and Respondent replied (Doc. 16).  Briefing crystallized the

dispute.  The parties acknowledge that the sole issue is whether the No Surprises Act creates an

implied cause of action to enforce awards pursuant to § 9 of the Federal Arbitration Act.

Because it does not, Performance Health's Motion to Dismiss is GRANTED for lack of subject

matter jurisdiction.

I.      FACTUAL ALLEGATIONS

NeuroShield provides medically necessary intraoperative monitoring services.  (Doc. 1 at

¶¶ 2, 11.)[1]  Performance Health's insureds have received such services, but Performance Health

has not fully reimbursed NeuroShield.  (*Id.* at ¶¶ 11-13.)

As a result, NeuroShield engaged in the negotiation process mandated by the No

---

[1] For ease and consistency, briefing citations reflect the electronically stamped CM/ECF document and PageID# rather than any internal pagination.  Petition citations are to the internal paragraph notations.

Surprises Act. (*Id.* at ¶ 14.) Performance Health did not fully engage in the process, and it did not provide appropriate adjustments. (*Id.* at ¶ 15.) NeuroShield initiated the No Surprises Act's Independent Dispute Resolution ("IDR") process. (*Id.*) This process resolved in NeuroShield's favor with a four-part award totaling approximately $15,400. (*Id*. at ¶¶16-18; Doc. 1-2, IDR award.) Performance Health has not remitted payment consistent with the award. (Doc. 1 at ¶¶ 18, 20.) NeuroShield has attempted to compel Performance Health's compliance. (*Id*. ¶ at 19.) It sent demand letters, initiated phone calls and emails, and filed regulatory complaints with the Centers for Medicare & Medicaid Services ("CMS").[2] (*Id.*)

## II. PROCEDURAL HISTORY

NeuroShield's Complaint and Petition to Confirm Arbitration Award and Entry of Judgment seeks enforcement of the IDR award pursuant to 9 U.S.C. § 9. (*Id.* at ¶¶ 21-25.) No other cause of action is alleged. NeuroShield seeks, among other things, an order confirming the award and a judgment in its favor for "all unpaid amounts." (*Id.* at 5.)

Performance Health moves for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing primarily that the Court lacks subject matter jurisdiction. (Doc. 10.) NeuroShield takes the opposite position. (Doc. 15.)

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Johnson v. Johnson*, 157 F.4th 813, 817 (6th Cir. 2025) ("Congress has the right to restrict the lower federal courts' jurisdiction . . . if Congress does not confer jurisdiction on the lower federal courts, then they

---

[2] NeuroShield's allegations do not include the timing of these efforts, whether there has been a response from CMS, or the expected timing of any response.

cannot hear the case, even if it falls within . . . Article III.")

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  Challenges to subject matter jurisdiction can "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id*. (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868, 115 S. Ct. 188, 130 L. Ed. 2d 121 (1994)).  Courts reviewing facial attacks to subject matter jurisdiction presume all well pleaded allegations are true and draw all reasonable inferences in the plaintiff's favor. *Johnson*, 157 F.4th at 817.  Factual attacks open the door for district courts to evaluate evidence outside of the pleadings to resolve whether it has authority to hear the case. *Nichols v. Muskingum Coll*., 318 F.3d 674, 677 (6th Cir. 2003).  When a Rule 12(b)(1) motion is presented, the plaintiff has the burden of proving subject matter jurisdiction. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

Neither party argues this Court must go beyond the pleadings to resolve the pending motion, and the Court agrees.

IV.     **ANALYSIS**

A.      **The No Surprises Act**

In December 2020, Congress passed the No Surprises Act ("NSA") "to address the issue of patients facing unexpected—and often exceedingly large—medical bills" largely related to emergency services or treatment from out-of-network providers. *Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs*., 145 F.4th 212, 219 (2d Cir. 2025); *Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1115 (11th Cir. 2025); 42 U.S.C. §§ 300gg-111, 300gg-112.  Providers can no longer bill patients

directly for these "surprise medical bills."  42 U.S.C. § 300gg-111; *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025), *cert. denied*, No. 25-441, 2026 WL 79855, 2026 U.S. LEXIS 397 (U.S. Jan. 12, 2026).  Instead, billing disputes are resolved between the providers and insurers through a specified IDR process.  *Id.*

The process begins with a negotiation.  42 U.S.C. § 300gg-111(c)(1)(A).  If the provider and insurer cannot negotiate an agreed price for services, either party may initiate formal IDR proceedings within a specified number of days.  *Id.* at § 300gg-111(c)(1)(B).  Once IDR is requested, a certified independent dispute resolution entity ("CIDRE") is identified to resolve the dispute.[3]  *Id.* at § 300gg-111(c)(4).  The CIDRE receives offers, one from the provider and one from the insurer, and determines which offer will be awarded.  *Id.* at § 300gg-111(c)(5).  The CIDRE's determination of which offer to accept is guided by a list of factors, including "the qualifying payment amount" for comparable items or services in the same region.  *Id.* at § 300gg-111(a)(3)(E).

"In the absence of a fraudulent claim or evidence of a misrepresentation of facts to the CIDRE, the IDR award shall be binding on the parties involved, and payment of the award shall be made . . . not later than 30 days after the date on which such determination is made." *Guardian Flight*, 140 F.4th at 274 (quotations and citations omitted).  "HHS has the authority to enforce provider and payor non-compliance with the NSA's provisions."  *Id.* (citing 42 U.S.C. § 300gg-22(b)(2)(A)).

IDR awards "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of [T]itle 9" of the Federal Arbitration Act.  42

---

[3] The Secretaries of Labor, Treasury, and the Department of Health identify experts with "sufficient medical, legal, and other expertise" to review and resolve these disputes.  42 U.S.C. § 300gg-111(c)(4)(A)(i).

U.S.C. § 300gg-111(c)(5)(E)(i)(II).  Section 10(a) states that a federal court may vacate an

arbitration award:

(1) [W]here the award was procured by corruption, fraud, or undue means;

(2) [W]here there was evident partiality or corruption in the arbitrators, or either of them;

(3) [W]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) [W]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

### B.       Implied Right of Action

An implied right of action "is an increasingly rare creature, one that requires [courts] to

infer that Congress created a private *right* and provided for a private *remedy*, all without taking

the conventional route of doing so expressly."  *Ohlendorf v. United Food & Com. Workers Int'l*

*Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018) (emphasis in original), *cert. denied*, 586

U.S. 869, 139 S. Ct. 198, 202 L. Ed. 2d 123 (2018).  An implied right of action must be

supported by statutory language.  *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S. Ct. 1511,

149 L. Ed. 2d 517 (2001).  This is not to say that it must be expressly stated, that would be an

express cause of action, but the language chosen by Congress must still convey an intent to

create an implied right of private action in "clear and unambiguous" terms.  *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 290, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002).

Whether Congress clearly and unambiguously created an implied right of action focuses

on the statute's "rights-creating language."  *Ohlendorf*, 883 F.3d at 641.  Meaning, does the

statute create person-specific rights.  "Statutes that ban conduct but do not identify specific

beneficiaries do not suffice." *Id.*; *Sandoval*, 532 U.S. at 289; *Gonzaga*, 536 U.S. at 286 ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or any other implied right of action.").

*Ohlendorf* helpfully provides examples of statutes with "rights-creating language." 883 F.3d at 641. "A statute that says '*[n]o person* in the United States shall . . . be subjected to discrimination' on the basis of race creates an individual right to be free from race discrimination." *Id.* (citation omitted) (emphasis in opinion). The right is stated—to be free from discrimination. The beneficiary is clear—all persons. Thus, an implied right of action was stated in "clear and unambiguous" terms. *Gonzaga*, 536 U.S. at 290.

*Ohlendorf* also laid out examples of statutory language that did not identify beneficiaries sufficient to state a clear intent to create a private cause of action. 883 F.3d at 641. In *Gonzaga*, the statute prohibited "the funding of 'any educational agency or institution which has a policy or practice of permitting the release of educational records' [which] create[d] no rights at all, even though [students] might benefit from the statute and might have an interest in enforcing it." *Id.* (quoting *Gonzaga*, 536 U.S. at 287-88). Similarly impermissible were statutes directing or approving state or agency action. *Id.* ("Nor a statute that requires state governments to 'substantially comply' with federal requirements to receive [certain] federal funds . . . . Nor a statute that requires the federal government to 'approve any [state Medicaid] plan which fulfills . . . [the] conditions specified.'") (first quoting *Blessing v. Freestone*, 520 U.S. 329, 344, 117 S. Ct. 1353, 137 L. Ed .2d 569 (1997); and then quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 331, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015)).

The NSA expressly states that "group health plans and insurers 'shall . . . pay' the IDR-

determined amount . . . and that the determination 'shall be binding on the parties.'" (Doc. 15 at 114) (quoting 42 U.S.C. §§ 300gg-112(b)(6), 300gg-111(c)(5)(E)(i)); *see also T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Ass'n*, No. 25-CV-1255, 2025 WL 3496382, 2025 U.S. Dist. LEXIS 252293, at *23 (S.D.N.Y. Dec. 5, 2025); *Axis Neuromonitoring, LLC v. Aetna Inc., et al.*, No. 25-CV-01048, 2026 WL 795260, 2026 U.S. Dist. LEXIS 61210, at *3 (D. Conn. Mar. 20, 2026). It also identifies "the medical provider as 'the beneficiary of the non-prevailing party's payment obligations,'" indicating a statutory focus on the person protected—the medical provider. *Axis Neuromonitoring*, 2026 U.S. Dist. LEXIS 61210, at *14-15(quoting *T.V. Seshan*, 2025 U.S. Dist. LEXIS 252293, at *23 (citing 42 U.S.C. § 300gg-111(c)(6))).[4]

But the Court's analysis must go further. Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). When Congress incorporates certain provisions of existing law into a new law, courts should view that as intentional. *Ohlendorf*, 883 F.3d at 642. Indeed, "[courts] should respect [Congress's] ability to decide when, and when not, to create private rights of action." *Id.*

Section 9 of the Federal Arbitration Act provides as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award . . . .

9 U.S.C. § 9. Central to § 9 is that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468,

---

[4] Performance Health suggests the NSA does not apply here, a point NeuroShield disputes. Because it is not properly before this Court, meaning Performance Health has not sought to vacate the IDR award for any of the reasons specified in § 10 or correct it pursuant to § 11, the Court takes no position.

479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).  The NSA does not reference § 9, perhaps because it could be inapplicable in most instances contemplated by the NSA.  Out-of-network providers generally do not have contractual relationships with the insured.  *See AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 142 F.4th 403, 405 (6th Cir. 2025) ("When a healthcare provider has contracted with an insurer to set the prices the insurer and its members will pay, that provider is considered in-network.").

More pertinent here is that § 9 was enacted before the NSA.  *See* 9 U.S.C. § 9 (enacted in 1925); No Surprises Act, Pub. L. No. 116-260, 134 Stat. 1182, 2758 (2020).  So was § 10.  9 U.S.C. § 10.  Congress's decision to incorporate only certain provisions of § 10, namely allowing only for vacatur in limited instances and making no reference to § 9, must be viewed as intentional.  *Ohlendorf*, 883 F.3d at 642.  This limitation on judicial review cuts against reading the NSA to permit am implied right of action to enforce IDR awards.  *T.V. Seshan*, 2025 U.S. Dist. LEXIS 252293, at *25 (citing *Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 25-CV-1087, 2025 WL 3063648, 2025 U.S. Dist. LEXIS 215824, at *34 (D.N.J. Nov. 3, 2025)).

In addressing the incorporation, or lack thereof, of existing provisions of the FAA into the NSA, the Fifth Circuit stated:

> We will not find an implied right of action where Congress expressly forecloses it. Congress could have done otherwise.  Section 9 of the FAA empowers courts to confirm or enforce arbitration awards, but Congress chose not to incorporate § 9 into the NSA.  It incorporated only parts of § 10.  By contrast, in other statutes, Congress *has* incorporated § 9 to create a private right of action.  So, Congress knew how to create a private right of action in the NSA—and has done so elsewhere—but declined to do so.

*Guardian Flight*, 140 F.4th at 276 (citations omitted) (emphasis in original).

Notwithstanding, NeuroShield argues it has no true mechanism to pursue IDR awards, leading to an absurd result that weighs in favor of recognizing an implied right of action.  (Doc. 15 at 117, 126-27.)  NeuroShield's argument is more about preferred methods of enforcement

rather than no enforcement mechanism at all.  Nonetheless, while courts have reached different conclusions on this point, the vast majority have found the NSA's enforcement mechanisms reveal a clear intent to preclude an implied right of action.

"Were the NSA to create a right without an apparent remedy, that itself is strong evidence that Congress intended judicial enforcement."  *Mod. Orthopaedics of NJ*, 2025 U.S. Dist. LEXIS 215824, at *24 (citing *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324, 140 S. Ct. 1308, 206 L. Ed. 2d 764 (2020)).  But the "'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'"  *Guardian Flight*, 140 F.4th at 277 (quoting *Sandoval*, 532 U.S. at 290); *see also Ohlendorf*, 883 F.3d at 643 (noting available means of enforcing the statute included filing a complaint with the National Labor Relations Board).

As spelled out in *Guardian Flight*, the NSA authorizes "HHS to assess penalties against insurers for failure to comply with the NSA."  140 F.4th at 277 (citing 42 U.S.C. § 300gg-22(b)(2)(A); 45 C.F.R. § 150.301, *et seq.*).  CMS, "an agency within HHS, has acted on that authority by soliciting provider complaints and compelling payors to pay IDR awards where appropriate."  *Id.*; *see also T.V. Seshan*, 2025 U.S. Dist. LEXIS 252293, at *27; *Savalia v. Blue Shield of Cal. Life & Health Ins. Co.*, No. 25-cv-02031, 2025 U.S. Dist. LEXIS 261150, at *15 (C.D. Cal. Dec. 16, 2025); *Axis Neuromonitoring*, 2026 U.S. Dist. LEXIS 61210, at *16-17.

NeuroShield relies heavily on the district court decision in *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025) ("*Aetna*").  To be sure, the court concluded, in part, that the absence of meaningful enforcement mechanisms created "strange asymmetries" where fraud, for example, could lead to judicial relief but judicial relief was unavailable to a party seeking enforcement of the award.  *Id.* at 228.  But, in a later decision in the same case, the

authoring jurist acknowledged he may have reached a different decision had the parties briefed the administrative remedies set forth in 42 U.S.C. § 300gg-22.  *Axis Neuromonitoring*, 2026 U.S. Dist. LEXIS 61210, at * 18.

*Guardian Flight* is the only circuit court decision addressing whether the NSA created an implied right of action.  140 F.4th at 277.  The Fifth Circuit rejected the argument.  *Id.*  A vast majority of district courts have done the same.  *See T.V. Seshan*, 2025 U.S. Dist. LEXIS 252293, at *28; *Mod. Orthopaedics of NJ*, 2025 U.S. Dist. LEXIS 215824, at *23-25; *Savalia*, 2025 U.S. Dist. LEXIS 261150, at *14; *Axis Neuromonitoring*, 2026 U.S. Dist. LEXIS 61210, at *12; *FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, No. CV-23-876, 2024 WL 1461989, 2024 U.S. Dist. LEXIS 62018, at *9 (D. Ariz. Apr. 4, 2024); *E. Coast Adv. Plastic Surgery, LLC v. CIGNA Health & Life Ins. Co.*, No. 25-cv-255, 2025 WL 2371537, 2025 U.S. Dist. LEXIS 157911, at *48 (S.D.N.Y. Aug. 14, 2025).

While some other courts have enforced IDR awards, it is notable that the parties in those matters assumed—and waived challenges to—§ 9's applicability.  *See Axis Neuromonitoring*, 2026 U.S. Dist. LEXIS 61210, at *19 (collecting cases).  Such an example is *GPS of New Jersey M.D. v. Horizon Blue Cross & Blue Shield*, No. 22-6614, 2023 WL 5815821, 2023 U.S. Dist. LEXIS 159460 (D.N.J. Sept. 8, 2023) ("*GPS*"), another case on which NeuroShield relies.  *GPS* is distinguishable because the court did not engage in the more extensive analysis of the FAA's broader applicability to the NSA.  2023 U.S. Dist. LEXIS 159460.  Indeed, there was no challenge to § 9's applicability at all.  *Id.*  That is not the case here.  Performance Health challenges the application of § 9.  And the Court has found that the NSA did not create an implied right of action that would permit NeuroShield to commence a suit to enforce its IDR award pursuant to § 9.

For the reasons stated, this Court is persuaded by the decisions in *Guardian Flight* and the similarly decided district court decisions, all of which are in line with the Sixth Circuit's holding in *Ohlendorf*. Congress has spoken, and judicial action is limited.

### C. Leave to Amend Complaint

Rule 15(a) indicates that leave to file an amended complaint should be "freely" granted "when justice so requires." FED. R. CIV. P. 15(a)(2). "A request for leave to amend 'almost as an aside . . . in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145, 121 S. Ct. 1082, 148 L. Ed. 2d 958 (2001)).

Notwithstanding, leave to amend can be permitted when an opposition states some basis for amendment. But "[a] court need not grant leave to amend . . . where amendment would be 'futile.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Whether a proposed amendment is "futile" is governed by the standard applicable to a Rule 12(b)(6) motion to dismiss. *Id.* A court is within its discretion to refuse amendment and dismiss the complaint if it "concludes that the pleading as amended could not withstand a motion to dismiss." *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *see also Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745-46 (6th Cir. 1992).

As explained here, amendment would be futile because the NSA confers no implied cause of action permitting enforcement of IDR awards. Amending to add a different party would not lead to a different conclusion. And while there is a suggestion that NeuroShield could or is contemplating a separate unjust enrichment claim (Doc. 15 at 124-26), the Court would still lack

jurisdiction. While the parties may be diverse, the amount in controversy requirement cannot be met. (*See* Doc. 1-2 (award total was $15,400); Doc. 2-3 (proposed order unpaid amount of $15,048.31)).)

## V.    CONCLUSION

For the reasons stated herein, the Court lacks subject matter jurisdiction. Phoenix Administrators, LLC's Motion to Dismiss (Doc. 10) is GRANTED, and NeuroShield Network SE, LLC's Petition is DISMISSED.

**IT IS SO ORDERED.**

Date: March 30, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE